UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GRANT PHILLIPS and MYRANDA PHILLIPS, Individually and on behalf of O.P. and N.P., minor children,<br><br>Plaintiffs,<br><br>v.<br><br>RACHEL LUCAS, ADEDAYO OLAOSEBIKAN, STACIA FIELDS, NICHOLE GARROD, ASHLEY BUTLER-PANTER, PEGGY SURBEY, MARISSA LUOMA, M.D., and ANN FRESHOUR, M.D.,<br><br>Defendants. | CAUSE NO.  1:24-cv-2261 |

## COMPLAINT AND JURY DEMAND

1. Grant Phillips and Myranda Phillips ("the Phillips") are a married couple with two children. The first child, O.P., was born in April 2021. The other child, N.P., was born in October 2022.

2. The Phillips have a genetic condition called Ehlers-Danlos Syndrome ("EDS"), which is a rare genetic condition that affects connective tissues.

3. EDS has been associated with a higher rate of fractures in children.

4. On December 26, 2022, the Phillips took N.P. to the hospital because they had medical concerns about her. The hospital diagnosed N.P. with fractures in her leg, and contacted the Indiana Department of Child Services ("DCS"). DCS employees subsequently removed the children from the Phillips, filed proceedings to

have the children designated as Children In Need of Services ("CHINS"), and administratively substantiated allegations of abuse and neglect against the Phillips.

5. The Phillips, individually and on behalf of their minor children, O.P. .and N.P., seek redress for violation of their civil rights under federal law and the Fourth and Fourteenth Amendments to the United States Constitution.

6. This action is brought under 42 U.S.C. § 1983.

### THE PLAINTIFFS

7. The Phillips reside in Indiana with O.P. and N.P.

### THE DEFENDANTS

8. At all times relevant to this complaint, Rachel Lucas ("Lucas") was a Family Case Manager for the Marion County DCS Office. Pursuant to 42 U.S.C. § 1983, Lucas was acting under color of state law by virtue of her position with DCS.

9. At all times relevant to this complaint, Adedayo Olaosebikan ("Olaosebikan") was a Family Case Manager for the Marion County DCS Office. Pursuant to 42 U.S.C. § 1983, Olaosebikan was acting under color of state law by virtue of her position with DCS.

10. At all times relevant to this complaint, Stacia Fields ("Fields") was a Family Case Manager Supervisor for the Marion County DCS Office. Pursuant to 42 U.S.C. § 1983, Fields was acting under color of state law by virtue of her position with DCS.

11. At all times relevant to this complaint, Nichole Garrod ("Garrod") was a Family Case Manager Supervisor for the Marion County DCS Office. Pursuant to 42

U.S.C. § 1983, Garrod was acting under color of state law by virtue of her position with DCS.

12. At all times relevant to this complaint, Ashley Butler-Panter ("Butler-Panter") was a Division Manager for DCS. Pursuant to 42 U.S.C. § 1983, Butler-Panter was acting under color of state law by virtue of her position with DCS.

13. At all times relevant to this complaint, Peggy Surbey ("Surbey") was a Regional Manager for DCS. Pursuant to 42 U.S.C. § 1983, Surbey was acting under color of state law by virtue of her position with DCS.

14. At all times relevant to this complaint, Ann Freshour, M.D., was a doctor with a specialty in child abuse pediatrics and assistant professor of clinical pediatrics with the Indiana University School of Medicine ("IUSM"). Her principal place of business is in Marion County, Indiana. Pursuant to 42 U.S.C. § 1983, Dr. Freshour was a state actor by virtue of her employment with IUSM.

15. At all times relevant to this complaint, Marissa Luoma, M.D., was a doctor with a specialty in child abuse pediatrics and assistant professor of clinical pediatrics with the Indiana University School of Medicine ("IUSM"). Her principal place of business is in Marion County, Indiana. Pursuant to 42 U.S.C. § 1983, Dr. Louma was a state actor by virtue of her employment with IUSM

16. The Defendants acted individually and jointly under color of state law to deprive Plaintiffs of their civil rights.

17. Because they acted knowingly, recklessly and in disregard of well-established law, with no objectively reasonable basis for their actions, Defendants

do not have qualified immunity from damages under the standards set forth by the United States Supreme Court, the Seventh Circuit, and this Court.

## JURISDICTION AND VENUE

18. This Court has original jurisdiction of this action under 28 U.S.C. § 1331 as a civil action arising under the Constitution and laws of the United States.

19. Venue in this Court is proper under 28 U.S.C. § 1391(a) because this is the judicial district in which a substantial part of the events giving rise to the claims occurred.

## FACTS

20. The Phillips lived together with their children in Indianapolis, Indiana.

21. Myranda was the children's primary caregiver, but a number of friends and relatives spent time with the children after N.P.'s birth.

22. The Phillips spent time with family on many days prior to Christmas Day in 2022, where N.P. was handled by multiple individuals, including children.

23. On December 26, Myranda noticed swelling on N.P.'s legs, and took her to the emergency room at Riley Children's Hospital ("Riley") in Indianapolis for a medical evaluation.

24. Riley took images of N.P., which showed multiple fractures of different age in N.P.'s legs.

25. Riley personnel were concerned that N.P.'s injuries could be the result of non-accidental trauma and called DCS to report the situation.

26. Lucas was a DCS family case manager and reported to Riley to investigate whether N.P. was a victim of child abuse.

27. Lucas spoke with the Phillips, who told her that they had visited with family, and that they did not know how the injuries occurred.

28. While investigating whether N.P. was a victim of abuse or neglect, Lucas consulted with Drs. Freshour and Louma.

29. Drs. Freshour and Louma are both assistant professors of clinical pediatrics with the Indiana University School of Medicine ("IUSM").

30. IUSM has a Department of Pediatrics, which contains a Child Protection Program division, of which Drs. Freshour and Louma were members.

31. Pediatric evaluation diagnostic services ("PEDS") is a program within IUSM's Child Protection Program.

32. DCS has contract with Indiana University for key personnel within IUSM's Child Protection Program to provide forensic evaluations to DCS personnel through the PEDS program for the purpose of assisting DCS assessments of whether a child has been the victim of abuse or neglect (the "Contract").

33. A copy of the Contract and its amendments is attached as Exhibit A.

34. Under the Contract and earlier versions of that agreement, the PEDS program provides approximately 6,000 forensic evaluations to DCS personnel each year.

35. Drs. Freshour and Louma are specifically identified as key personnel for the PEDS program within the Contract.

36. Drs. Freshour and Louma knew that the purpose of their communications with DCS was to assist DCS personnel evaluate whether to remove children from their parents and accuse their parents of abuse and neglect.

37. Drs. Freshour and Louma knew that children may be improperly removed from their parents' care if they gave false information to DCS personnel.

38. Drs. Freshour and Louma are also physicians with a specialty in child abuse pediatrics at Riley.

39. When engaging with Lucas and the Phillips family, Drs. Freshour and Louma were acting in their roles as members of the PEDS program.

40. On December 26, Lucas spoke with Dr. Louma via telephone, who told Lucas that N.P. had fractures in each of her fibulas.

41. At no point in time did N.P. ever have a fractured fibula.

42. Dr. Louma knew or should have known that she should not tell any DCS personnel that a child suffered fractures that did not exist.

43. Dr. Louma told Lucas that N.P.'s fractures were highly suspicious of child abuse, could only have been caused by a significant amount of blunt force, and could not have been caused by a child.

44. Dr. Louma also told Lucas that she had an immediate concern for N.P.'s safety.

45. Dr. Louma reached these conclusions without ever seeing N.P.

46. Doctors that treated N.P. saw that N.P. had blue sclera.

6

47. Blue sclera is a symptom of inherited medical conditions associated a predisposition to skeletal fragility, like osteogenesis imperfecta and Ehlers Danlos syndrome ("EDS"), a congenital connective tissue disorder that can cause hypermobility.

48. The PEDS program records showed that Grant Phillips has blue sclera and a family history of hypermobility disorders.

49. A physical examination of Grant and Myranda would also have demonstrated hypermobility consistent with EDS.

50. N.P. also exhibited other signs of EDS, such as joint clicking; gastroparesis; soft, translucent skin; easy bruising; and frontal bossing.

51. If Dr. Louma had seen N.P., then she would have seen that N.P. had blue sclera and other signs of EDS.

52. Dr. Louma knew or should have known that patients with EDS and low Vitamin D are susceptible to fractures.

53. Dr. Louma did not verify whether N.P. had low Vitamin D before giving her conclusions to Lucas.

54. Dr. Louma knew or should have known that she should rule out genetic conditions that could affect bone fragility before informing Lucas or other DCS personnel that N.P.'s injuries could only have been caused by a drop or the use of a significant amount of force or that they could not have been caused by a child.

55. Dr. Louma did not rule out genetic conditions that could affect bone fragility before informing Lucas or other DCS personnel that N.P.'s injuries could

only have been caused by a drop or the use of a significant amount of force or that they could not have been caused by a child.

56. N.P. has been diagnosed with EDS.

57. Dr. Louma told Lucas that N.P. did not have a bone deficiency, but did not tell Lucas that N.P. had EDS.

58. After speaking with Dr. Louma, Lucas consulted with her supervisor, Fields, and the two agreed to seize N.P. and to separate her from her family.

59. Lucas seized the children on December 26, 2022.

60. At the time of the seizure, Lucas and Fields had no reason to think that the Phillips, rather than someone else with access to N.P., caused N.P.'s fractures.

61. DCS filed a petition seeking to have each of the children be declared Children in Need of Services ("CHINS") in the Marion County Superior Court (the "State Court").

62. Lucas and Fields caused the petition to be filed.

63. The petition omitted that N.P. has EDS.

64. The petition omitted that N.P. had been handled by numerous adults in the days before December 26, 2022.

65. The petition was supported by a "Preliminary Inquiry" signed by Lucas and Fields.

66. Lucas provided the Preliminary Inquiry to the State Court.

67. The Preliminary Inquiry falsely stated that N.P. fibulas had been fractured.

68. The Preliminary Inquiry omitted that N.P. has EDS.

69. The Preliminary Inquiry omitted that N.P. had been handled by numerous adults in the days before December 26, 2022.

70. DCS would not have been able to show probable cause that the Phillips injured N.P. if this information had been included in the CHINS petition or Preliminary Inquiry.

71. Dr. Freshour examined N.P. on January 12, 2023.

72. At that visit, Dr. Freshour noted that Grant's blue sclera were "concerning."

73. N.P.'s sclera were also blue at that visit.

74. Dr. Freshour knew or should have known that she should rule out genetic conditions that could affect bone fragility before informing DCS personnel that N.P.'s injuries could only have been caused by a drop or the use of a significant amount of force or that they could not have been caused by a child.

75. Dr. Freshour did not rule out genetic conditions that could affect bone fragility before informing DCS personnel that N.P.'s injuries could only have been caused by a drop or the use of a significant amount of force or that they could not have been caused by a child.

76. Despite the blue sclera and family history of hypermobility, Dr. Freshour did not test whether N.P. had EDS.

77. Dr. Freshour spoke with Olaosebikan and sent a report stating that N.P.'s injuries were most consistent with non-accidental trauma or inflicted injury and recommending that DCS take action to ensure the safety of the children.

78. By "non-accidental trauma" Dr. Freshour meant physical child abuse.

79. Lucas, Fields, and Garrod substantiated allegations of child abuse and neglect in an administrative proceeding in early 2023.

80. The substantiation that the Phillips abused or neglected their children is false.

81. When DCS substantiates allegations of abuse or neglect against a person, then that person is placed on Indiana's Child Protection Index ("CPI").

82. The CPI is a centralized index listing individuals with substantiated reports of child abuse and neglect.

83. Anyone who provides for the care, health, safety, and supervision of a child's social, emotional, and educational growth may access this information, including health care providers.

84. This information is transmitted to a national index.

85. This information is available upon request to health care employers.

86. Myranda is an occupational therapist.

87. The placement of Myranda on the CPI would legally prevent her from working in her chosen career.

88. Before the allegations against Myranda were substantiated, she was provided with administrative reviews by Butler-Panter.

89. At that administrative review, Butler-Panter was presented with evidence showing that many other people had handled N.P. during the time that the fractures occurred.

90. After that review, Butler-Panter and Garrod approved of the substantiations against the Phillips.

91. A further administrative review was performed by Surbey.

92. At that administrative review, Surbey was presented with evidence showing that many other people had handled N.P. during the time that the fractures occurred.

93. After that review, Surbey and Garrod approved of the substantiations.

94. The State Court held a fact-finding hearing in 2023 and found that DCS failed to prove that the children were CHINS.

95. Despite this finding, DCS has continued to substantiate allegations of abuse and neglect against the Phillips as to N.P.

## Count I – Violations of 42 U.S.C. § 1983

96. Plaintiffs incorporate by reference the previous allegations in this complaint.

97. Defendants seized the children on or about December 26, 2022, without probable cause, without court order, and when the children were in no imminent danger, thereby violating the children's Fourth Amendment right against unreasonable seizure.

11

98. By seizing the children and taking them from the Phillips without probable cause, without a court order, and when they were in no imminent danger, Defendants also violated the Plaintiffs' Fourteenth Amendment substantive due process right to familial relations.

99. By seizing the children without a pre-deprivation hearing or court order when there was no probable cause to believe that the children were in imminent danger due to abuse or neglect and no exigent circumstances existed, Defendants violated the Fourteenth Amendment due process rights of Plaintiffs.

100. Defendants violated the Plaintiffs' due process rights under the Fourteenth Amendment when they misrepresented that N.P. did not have genetic conditions that could lead to bone fragility.

101. Defendants violated the Plaintiffs' due process rights under the Fourteenth Amendment when they misrepresented that N.P. suffered fractures that she did not actually suffer.

102. Defendants violated the Plaintiffs' due process rights under the Fourteenth Amendment when they omitted that N.P. had EDS.

103. Defendants violated the Plaintiffs' due process rights under the Fourteenth Amendment when they omitted the fact that N.P. had been handled by many family members in the days before her injuries were diagnosed.

104. By failing to follow governing law regarding the classification of child abuse allegations, Defendants violated the Plaintiffs' Fourteenth Amendment due process rights.

105. Defendants violated the Plaintiffs' due process rights under the Fourteenth Amendment by substantiating the allegations of abuse and neglect against Myranda.

106. Defendants violated the Plaintiffs' due process rights under the Fourteenth Amendment by not unsubstantiating the allegations of abuse and neglect against Myranda.

107. Plaintiffs have been damaged as a result of Defendants' wrongful conduct.

108. For each violation of 42 U.S.C. § 1983, the Phillips individually, and on behalf of their minor children, seek to recover the following:

    a. Compensatory damages in an amount to be determined by a jury;

    b. Punitive damages in an amount to be determined by a jury;

    c. Reasonable attorney and expert fees pursuant to 42 U.S.C. § 1988; and

    d. Any further relief that may be appropriate.

WHEREFORE, Plaintiffs pray for damages in an amount of money which will fairly and adequately compensate them for all losses, injuries and damages, for the costs of this action, reasonable attorney's fees, and for all other relief just and proper under the circumstances.

## JURY DEMAND

Plaintiffs request a trial by jury.

>
> Respectfully submitted,
>
> WILLIAMS LAW GROUP, LLC
>
> /s/ *Brad A. Catlin*
> Brad Aaron Catlin, Atty. No. 21570-29
> 1101 N. Delaware Street, Suite 200
> Indianapolis, IN  46202
> Tel: (317) 633-5270
> brad@williamsgroup.law
>
> ATTORNEYS FOR PLAINTIFFS