UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

|  |  |  |
|---|---|---|
| GRANT PHILLIPS, et al., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:24-cv-02261-JRS-CSW |
| RACHEL LUCAS, et al., | ) ) ) | |
| Defendants. | ) ) | |

**Answer, Affirmative Defenses, and Demand for Jury**

Defendants, Rachel Lucas, Adedayo Olaosebikan, Stacia Fields, Nichole Garrod, Ashley Butler-Panter, and Peggy Surbey, ("DCS Defendants"), by counsel, Thomas S. Pratt, Deputy Attorney General, answer Plaintiffs' amended complaint (ECF 22) as follows:

**I.    Answer**

**COMPLAINT AND JURY DEMAND**

1.    Grant Phillips and Myranda Phillips ("the Phillips") are a married couple with two children. The first child, O.P., was born in April 2021. The other child, N.P., was born in October 2022.

**Answer**: DCS Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations.

2.    The Phillips have a genetic condition called Ehlers-Danlos Syndrome ("EDS"), which is a rare genetic condition that affects connective tissues.

**Answer**: DCS Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations.

3.    EDS has been associated with a higher rate of fractures in children.

**Answer**: DCS Defendants lack knowledge or information sufficient to form a belief as to the truth of the assertion.

4.     On December 26, 2022, the Phillips took N.P. to the hospital because they had medical concerns about her. The hospital diagnosed N.P. with fractures in her leg, and contacted the Indiana Department of Child Services ("DCS"). DCS employees subsequently removed the children from the Phillips, filed proceedings to have the children designated as Children In Need of Services ("CHINS"), and administratively substantiated allegations of abuse and neglect against the Phillips.

**Answer**: This is not an assertion of fact or an allegation that requires a response. To the extent that it requires a response, the DCS Defendants admit that, in summary, N.P. suffered from multiple fractures in her lower extremities, which were discovered on or about December 26, 2022, that DCS was contacted with concerns of child physical abuse and neglect, that a CHINS proceeding was initiated as a result of N.P.'s injuries, that allegations of child physical abuse and neglect were substantiated against Plaintiffs, but lack knowledge or information sufficient to form a belief as to the truth of all remaining allegations, and deny anything that directly or indirectly alleges any wrongdoing and further deny that Plaintiffs are entitled to any relief.

5.     The Phillips, individually and on behalf of their minor children, O.P. .and N.P., seek redress for violation of their civil rights under federal law and the Fourth and Fourteenth Amendments to the United States Constitution.

**Answer**: This is not an assertion of fact or an allegation that requires a response. To the extent that it requires a response, DCS Defendants admit that Plaintiffs have alleged claims

- 2 -

under the Fourth and Fourteenth Amendments but deny anything that directly or indirectly

alleges any wrongdoing and further deny that Plaintiffs are entitled to any relief.

6.    This action is brought under 42 U.S.C. § 1983.

**Answer**: This is not an assertion of fact or an allegation that requires a response. To the

extent that it requires a response, DCS Defendants admit that Plaintiffs have asserted claims

pursuant to 42 U.S.C. § 1983 but deny anything that directly or indirectly alleges any

wrongdoing and further deny that Plaintiffs are entitled to any relief.

### THE PLAINTIFFS

7.    The Phillips reside in Indiana with O.P. and N.P.

**Answer**: DCS Defendants lack knowledge or information sufficient to form a belief as to

the truth of the allegations.

### THE DEFENDANTS

8.    At all times relevant to this complaint, Rachel Lucas ("Lucas") was a Family Case

Manager for the Marion County DCS Office. Pursuant to 42 U.S.C. § 1983, Lucas was acting

under color of state law by virtue of her position with DCS.

**Answer**: This is a legal conclusion and not an assertion of fact or an allegation that

requires a response. To the extent that it requires a response, DCS Defendants admit that Rachel

Lucas was a Family Case Manager for DCS, deny the remaining allegations, and deny anything

that directly or indirectly alleges any wrongdoing and further deny that Plaintiffs are entitled to

any relief.

9.    At all times relevant to this complaint, Adedayo Olaosebikan ("Olaosebikan")

was a Family Case Manager for the Marion County DCS Office. Pursuant to 42 U.S.C. § 1983,

Olaosebikan was acting under color of state law by virtue of her position with DCS.

**Answer**: This is a legal conclusion and not an assertion of fact or an allegation that requires a response. To the extent that it requires a response, DCS Defendants admit that Adedayo Olaosebikan was a Family Case Manager for DCS, deny the remaining allegations, and deny anything that directly or indirectly alleges any wrongdoing and further deny that Plaintiffs are entitled to any relief.

10.    At all times relevant to this complaint, Stacia Fields ("Fields") was a Family Case Manager Supervisor for the Marion County DCS Office. Pursuant to 42 U.S.C. § 1983, Fields was acting under color of state law by virtue of her position with DCS.

**Answer**: This is a legal conclusion and not an assertion of fact or an allegation that requires a response. To the extent that it requires a response, DCS Defendants admit that Stacia Fields was and is a Family Case Manager Supervisor for DCS, deny the remaining allegations, and deny anything that directly or indirectly alleges any wrongdoing and further deny that Plaintiffs are entitled to any relief.

11.    At all times relevant to this complaint, Nichole Garrod ("Garrod") was a Family Case Manager Supervisor for the Marion County DCS Office. Pursuant to 42 U.S.C. § 1983, Garrod was acting under color of state law by virtue of her position with DCS.

**Answer**: This is a legal conclusion and not an assertion of fact or an allegation that requires a response. To the extent that it requires a response, DCS Defendants admit that Nichole Garrod was and is a Family Case Manager Supervisor for DCS, deny the remaining allegations, and deny anything that directly or indirectly alleges any wrongdoing and further deny that Plaintiffs are entitled to any relief.

12.    At all times relevant to this complaint, Ashley Butler-Panter ("Butler- Panter") was a Division Manager for DCS. Pursuant to 42 U.S.C. § 1983, Butler- Panter was acting under color of state law by virtue of her position with DCS.

**Answer**: This is a legal conclusion and not an assertion of fact or an allegation that requires a response. To the extent that it requires a response, DCS Defendants admit that Ashley Butler-Panter was a Division Manager, but deny anything that directly or indirectly alleges any wrongdoing and further deny that Plaintiffs are entitled to any relief.

13.    At all times relevant to this complaint, Peggy Surbey ("Surbey") was a Regional Manager for DCS. Pursuant to 42 U.S.C. § 1983, Surbey was acting under color of state law by virtue of her position with DCS.

**Answer**: This is a legal conclusion and not an assertion of fact or an allegation that requires a response. To the extent that it requires a response, DCS Defendants admit that Peggy Surbey was a Regional Manager for DCS, deny the remaining allegations, and deny anything that directly or indirectly alleges any wrongdoing and further deny that Plaintiffs are entitled to any relief.

14.    At all times relevant to this complaint, Ann Freshour, M.D., was a doctor with a specialty in child abuse pediatrics and assistant professor of clinical pediatrics with the Indiana University School of Medicine ("IUSM"). Her principal place of business is in Marion County, Indiana. Pursuant to 42 U.S.C. § 1983, Dr. Freshour was a state actor by virtue of her employment with IUSM.

**Answer**: DCS Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations.

15.    At all times relevant to this complaint, Marissa Luoma, M.D., was a doctor with a specialty in child abuse pediatrics and assistant professor of clinical pediatrics with the Indiana University School of Medicine ("IUSM"). Her principal place of business is in Marion County, Indiana. Pursuant to 42 U.S.C. § 1983, Dr. Louma was a state actor by virtue of her employment with IUSM.

**Answer**: DCS Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations.

16.    The Defendants acted individually and jointly under color of state law to deprive Plaintiffs of their civil rights.

**Answer**: This is a legal conclusion and not an assertion of fact or an allegation that requires a response. To the extent that a response is required, DCS Defendants deny any allegations of wrongdoing and further deny that Plaintiffs are entitled to any relief.

17.    Because they acted knowingly, recklessly and in disregard of well-established law, with no objectively reasonable basis for their actions, Defendants do not have qualified immunity from damages under the standards set forth by the United States Supreme Court, the Seventh Circuit, and this Court.

**Answer**: This is a legal conclusion and not an assertion of fact or an allegation that requires a response. To the extent that a response is required, DCS Defendants deny any allegations of wrongdoing and further deny that Plaintiffs are entitled to any relief.

## JURISDICTION AND VENUE

18.    This Court has original jurisdiction of this action under 28 U.S.C. § 1331 as a civil action arising under the Constitution and laws of the United States.

**Answer**: DCS Defendants admit that Plaintiffs have asserted claims and invoked this Court's jurisdiction pursuant to 28 U.S.C. § 1331 but deny anything that directly or indirectly alleges any wrongdoing and further deny that Plaintiffs are entitled to any relief.

19.    Venue in this Court is proper under 28 U.S.C. § 1391(a) because this is the judicial district in which a substantial part of the events giving rise to the claims occurred.

**Answer**: DCS Defendants admit that Plaintiffs have asserted claims and invoked venue in this Court's pursuant to 28 U.S.C. § 1391(a) but deny anything that directly or indirectly alleges any wrongdoing and further deny that Plaintiffs are entitled to any relief.

## FACTS

20.    The Phillips lived together with their children in Indianapolis, Indiana.

**Answer**: DCS Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations.

21.    Myranda was the children's primary caregiver, but a number of friends and relatives spent time with the children after N.P.'s birth.

**Answer**: DCS Defendants admit that Myranda is one of the primary caregivers for the children but lack knowledge or information sufficient to form a belief as to the truth of all remaining allegations.

22.    The Phillips spent time with family on many days prior to Christmas Day in 2022, where N.P. was handled by multiple individuals, including children.

**Answer**: DCS Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations.

23.    On December 26, Myranda noticed swelling on N.P.'s legs, and took her to the emergency room at Riley Children's Hospital ("Riley") in Indianapolis for a medical evaluation.

**Answer**: DCS Defendants admit that N.P. was seen in the emergency room on or about December 26, 2022, but lack knowledge or information sufficient to form a belief as to the truth of all remaining allegations.

24.    Riley took images of N.P., which showed multiple fractures of different age in N.P.'s legs.

**Answer**: DCS Defendants admit.

25.    Riley personnel were concerned that N.P.'s injuries could be the result of non-accidental trauma and called DCS to report the situation.

**Answer**: DCS Defendants admit N.P.'s injuries reflected non-accidental trauma but lack knowledge or information sufficient to form a belief as to the truth of all remaining allegations.

26.    Lucas was a DCS family case manager and reported to Riley to investigate whether N.P. was a victim of child abuse.

**Answer**: DCS Defendants admit only that Lucas was assigned as an FCM to investigate N.P.'s injuries and arrived at Riley to investigate N.P.'s injuries.

27.    Lucas spoke with the Phillips, who told her that they had visited with family, and that they did not know how the injuries occurred.

**Answer**: DCS Defendants admit only that Lucas interviewed the Phillips, who ultimately could not account for N.P.'s injuries, but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

28.    While investigating whether N.P. was a victim of abuse or neglect, Lucas consulted with Drs. Freshour and Louma.

**Answer**: DCS Defendants admit only that Lucas interviewed Dr. Freshour and Dr. Louma as a part of the investigation into N.P.'s injuries.

- 8 -

29.    Drs. Freshour and Louma are both assistant professors of clinical pediatrics with the Indiana University School of Medicine ("IUSM").

**Answer**: DCS Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations.

30.    IUSM has a Department of Pediatrics, which contains a Child Protection Program division, of which Drs. Freshour and Louma were members.

**Answer**: DCS Defendants lack knowledge or information sufficient to form a belief as to the truth of the role of Dr. Freshour and Louma or the allegations generally.

31.    Pediatric evaluation diagnostic services ("PEDS") is a program within IUSM's Child Protection Program.

**Answer**: DCS Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations.

32.    DCS has contract with Indiana University for key personnel within IUSM's Child Protection Program to provide forensic evaluations to DCS personnel through the PEDS program for the purpose of assisting DCS assessments of whether a child has been the victim of abuse or neglect (the "Contract").

**Answer**: DCS Defendants admit that DCS and Indiana University have a contractual agreement involving evaluation of children suspected to be victims of abuse or neglect but deny anything that directly or indirectly alleges any wrongdoing and further deny that Plaintiffs are entitled to any relief.

33.    A copy of the Contract and its amendments is attached as Exhibit A.

**Answer**: This is not an assertion of fact or an allegation that requires a response. To the extent that a response is required, DCS Defendants admit that DCS and IUSM have a contractual

agreement involving evaluation of children suspected to be victims of abuse or neglect, the contract speaks for itself, and DCS Defendants deny anything that directly or indirectly alleges any wrongdoing and further deny that Plaintiffs are entitled to any relief.

34.    Under the Contract and earlier versions of that agreement, the PEDS program provides approximately 6,000 forensic evaluations to DCS personnel each year.

**Answer**: This is not an assertion of fact or an allegation that requires a response. To the extent that a response is required, DCS Defendants admit that DCS and Indiana University have a contractual agreement involving evaluation of children suspected to be victims of abuse or neglect and, if this is a purported summary of the contract, the contract speaks for itself; DCS Defendants deny anything that directly or indirectly alleges any wrongdoing and further deny that Plaintiffs are entitled to any relief.

35.    Drs. Freshour and Louma are specifically identified as key personnel for the PEDS program within the Contract.

**Answer**: This is not an assertion of fact or an allegation that requires a response. To the extent that a response is required, DCS Defendants admit that DCS and Indiana University have a contractual agreement involving evaluation of children suspected to be victims of abuse or neglect and, if this is a purported summary of the contract, the contract speaks for itself; DCS Defendants deny anything that directly or indirectly alleges any wrongdoing and further deny that Plaintiffs are entitled to any relief.

36.    Drs. Freshour and Louma knew that the purpose of their communications with DCS was to assist DCS personnel evaluate whether to remove children from their parents and accuse their parents of abuse and neglect.

**Answer**: DCS Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations.

37.     Drs. Freshour and Louma knew that children may be improperly removed from their parents' care if they gave false information to DCS personnel.

**Answer**: This contains a legal conclusion and not an assertion of fact or an allegation that requires a response. To the extent that it requires a response, DCS Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations and deny anything that directly or indirectly alleges any wrongdoing and further deny that Plaintiffs are entitled to any relief.

38.     Drs. Freshour and Louma are also physicians with a specialty in child abuse pediatrics at Riley.

**Answer**: DCS Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations.

39.     When engaging with Lucas and the Phillips family, Drs. Freshour and Louma were acting in their roles as members of the PEDS program.

**Answer**: DCS Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations.

40.     On December 26, Lucas spoke with Dr. Louma via telephone, who told Lucas that N.P. had fractures in each of her fibulas.

**Answer**: DCS Defendants admit that Lucas spoke with Dr. Louma via telephone on December 26, but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

41.     At no point in time did N.P. ever have a fractured fibula.

**Answer**: DCS Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations.

42.     Dr. Louma knew or should have known that she should not tell any DCS personnel that a child suffered fractures that did not exist.

**Answer**: DCS Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations.

43.     Dr. Louma told Lucas that N.P.'s fractures were highly suspicious of child abuse, could only have been caused by a significant amount of blunt force, and could not have been caused by a child.

**Answer**: DCS Defendants admit only that N.P.'s injuries were highly suspicious of child abuse and that they could not be caused by a child, but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

44.     Dr. Louma also told Lucas that she had an immediate concern for N.P.'s safety.

**Answer**: DCS Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations.

45.     Dr. Louma reached these conclusions without ever seeing N.P.

**Answer**: DCS Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations.

46.     Doctors that treated N.P. saw that N.P. had blue sclera.

**Answer**: DCS Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations.

47.     Blue sclera is a symptom of inherited medical conditions associated a predisposition to skeletal fragility, like osteogenesis imperfecta and Ehlers Danlos syndrome ("EDS"), a congenital connective tissue disorder that can cause hypermobility.

**Answer**: DCS Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations.

48.     The PEDS program records showed that Grant Phillips has blue sclera and a family history of hypermobility disorders.

**Answer**: DCS Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations.

49.     A physical examination of Grant and Myranda would also have demonstrated hypermobility consistent with EDS.

**Answer**: DCS Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations.

50.     N.P. also exhibited other signs of EDS, such as joint clicking; gastroparesis; soft, translucent skin; easy bruising; and frontal bossing.

**Answer**: DCS Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations.

51.     If Dr. Louma had seen N.P., then she would have seen that N.P. had blue sclera and other signs of EDS.

**Answer**: DCS Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations.

52.     Dr. Louma knew or should have known that patients with EDS and low Vitamin D are susceptible to fractures.

**Answer**: DCS Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations.

53.     Dr. Louma did not verify whether N.P. had low Vitamin D before giving her conclusions to Lucas.

**Answer**: DCS Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations.

54.     Dr. Louma knew or should have known that she should rule out genetic conditions that could affect bone fragility before informing Lucas or other DCS personnel that N.P.'s injuries could only have been caused by a drop or the use of a significant amount of force or that they could not have been caused by a child.

**Answer**: DCS Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations.

55.     Dr. Louma did not rule out genetic conditions that could affect bone fragility before informing Lucas or other DCS personnel that N.P.'s injuries could only have been caused by a drop or the use of a significant amount of force or that they could not have been caused by a child.

**Answer**: DCS Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations.

56.     N.P. has been diagnosed with EDS.

**Answer**: DCS Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations.

57.     Dr. Louma told Lucas that N.P. did not have a bone deficiency, but did not tell Lucas that N.P. had EDS.

**Answer**: DCS Defendants admit that no information was presented to Lucas regarding EDS but otherwise deny the remaining allegations as written.

58.    After speaking with Dr. Louma, Lucas consulted with her supervisor, Fields, and the two agreed to seize N.P. and to separate her from her family.

**Answer**: DCS Defendants admit only that Lucas was involved in the decision to remove N.P. but deny remining allegations as written.

59.    Lucas seized  the children on December 26, 2022.

**Answer**: DCS Defendants admit only that Lucas was involved in the decision to remove N.P. and O.P., and that the children were removed on or about December 26, 2022, but otherwise deny the allegations as written.

60.    At the time of the seizure, Lucas and Fields had no reason to think that the Phillips, rather than someone else with access to N.P., caused N.P.'s fractures.

**Answer**: DCS Defendants deny as written.

61.    DCS filed a petition seeking to have each of the children be declared Children in Need of Services ("CHINS") in the Marion County Superior Court (the "State Court").

**Answer**: DCS Defendants admit.

62.    Lucas and Fields caused the petition to be filed.

**Answer**: DCS Defendants deny as written.

63.    The petition omitted that N.P. has EDS.

**Answer**: DCS Defendants lack knowledge or information sufficient to form a belief as to the truth of any EDS diagnosis N.P. may have had and deny the remaining allegations as written.

64.    The petition omitted that N.P. had been handled by numerous adults in the days before December 26, 2022.

**Answer**: DCS Defendants lack knowledge or information sufficient to form a belief as to the truth of N.P. having been handled by numerous adults in the days before December 26, 2022, and deny the remaining allegations as written.

65.    The petition was supported by a "Preliminary Inquiry" signed by Lucas and Fields.

**Answer**: DCS Defendants admit.

66.    Lucas provided the Preliminary Inquiry to the State Court.

**Answer**: DCS Defendants admit only that Lucas took part in completing a Preliminary Inquiry as a part of her investigation but deny the remaining allegations as written.

67.    The Preliminary Inquiry falsely stated that N.P. fibulas had been fractured.

**Answer**: DCS Defendants deny as written.

68.    The Preliminary Inquiry omitted that N.P. has EDS.

**Answer**: DCS Defendants lack knowledge or information sufficient to form a belief as to the truth of any EDS diagnosis N.P. may have had and further deny the remaining allegations as written.

69.    The Preliminary Inquiry omitted that N.P. had been handled by numerous adults in the days before December 26, 2022.

**Answer**: DCS Defendants lack knowledge or information sufficient to form a belief as to the truth of N.P. having been handled by numerous adults in the days before December 26, 2022, and further deny the remaining allegations as written.

70.    DCS would not have been able to show probable cause that the Phillips injured N.P. if this information had been included in the CHINS petition or Preliminary Inquiry.

**Answer**: This contains a legal conclusion and not an assertion of fact or an allegation that requires a response. To the extent that it requires a response, DCS Defendants deny the allegations.

71.     Dr. Freshour examined N.P. on January 12, 2023.

**Answer**: DCS Defendants admit.

72.     At that visit, Dr. Freshour noted that Grant's blue sclera were "concerning."

**Answer**: DCS Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations.

73.     N.P.'s sclera were also blue at that visit.

**Answer**: DCS Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations.

74.     Dr. Freshour knew or should have known that she should rule out genetic conditions that could affect bone fragility before informing DCS personnel that N.P.'s injuries could only have been caused by a drop or the use of a significant amount of force or that they could not have been caused by a child.

**Answer**: DCS Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations.

75.     Dr. Freshour did not rule out genetic conditions that could affect bone fragility before informing DCS personnel that N.P.'s injuries could only have been caused by a drop or the use of a significant amount of force or that they could not have been caused by a child.

**Answer**: DCS Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations.

76. Despite the blue sclera and family history of hypermobility, Dr. Freshour did not test whether N.P. had EDS.

**Answer**: DCS Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations.

77. Dr. Freshour spoke with Olaosebikan and sent a report stating that N.P.'s injuries were most consistent with non-accidental trauma or inflicted injury and recommending that DCS take action to ensure the safety of the children.

**Answer**: DCS Defendants admit that Olaosebikan spoke with Dr. Freshour but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

78. By "non-accidental trauma" Dr. Freshour meant physical child abuse.

**Answer**: DCS Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations.

79. Lucas, Fields, and Garrod substantiated allegations of child abuse and neglect in an administrative proceeding in early 2023.

**Answer**: DCS Defendants admit only that allegations of child abuse were substantiated as to N.P. and allegations of neglect were substantiated as to O.P.

80. The substantiation that the Phillips abused or neglected their children is false.

**Answer**: DCS Defendants deny the allegations.

81. When DCS substantiates allegations of abuse or neglect against a person, then that person is placed on Indiana's Child Protection Index ("CPI").

**Answer**: DCS Defendants admit.

82. The CPI is a centralized index listing individuals with substantiated reports of child abuse and neglect.

**Answer**: DCS Defendants admit.

83.     Anyone who provides for the care, health, safety, and supervision of a child's social, emotional, and educational growth may access this information, including health care providers.

**Answer**: DCS Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations.

84.     This information is transmitted to a national index.

**Answer**: DCS Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations.

85.     This information is available upon request to health care employers.

**Answer**: DCS Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations.

86.     Myranda is an occupational therapist.

**Answer**: DCS Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations.

87.     The placement of Myranda on the CPI would legally prevent her from working in her chosen career.

**Answer**: This allegation contains a legal conclusion and not an assertion of fact or an allegation that requires a response. To the extent that a response is required, DCS Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations.

88.     Before the allegations against Myranda were substantiated, she was provided with administrative reviews by Butler-Panter.

**Answer**: DCS Defendants admit that Myranda was provided with administrative review but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

89.    At that administrative review, Butler-Panter was presented with evidence showing that many other people had handled N.P. during the time that the fractures occurred.

**Answer**: DCS Defendants admit that Myranda was provided with administrative review but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

90.    After that review, Butler-Panter and Garrod approved of the substantiations against the Phillips.

**Answer**: DCS Defendants admit only that after the administrative review, the substantiation was upheld and the assessment was accepted by Garrod but otherwise deny as written.

91.    A further administrative review was performed by Surbey.

**Answer**: DCS Defendants admit that a further administrative review was provided but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

92.    At that administrative review, Surbey was presented with evidence showing that many other people had handled N.P. during the time that the fractures occurred.

**Answer**: DCS Defendants admit that a further administrative review was provided but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

93.    After that review, Surbey and Garrod approved of the substantiations.

**Answer**: DCS Defendants admit only that after the administrative review, the substantiation was upheld and the assessment was accepted by Garrod but otherwise deny as written.

94.    The State Court held a fact-finding hearing in 2023 and found that DCS failed to prove that the children were CHINS.

**Answer**: DCS Defendants admit that a fact-finding hearing was held in 2023 but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

95.    Despite this finding, DCS has continued to substantiate allegations of abuse and neglect against the Phillips as to N.P.

**Answer**: DCS Defendants admit only that allegations of child physical abuse as to N.P., and neglect as to O.P., remain substantiated as to the Phillips but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

### COUNT I – VIOLATIONS OF 42 U.S.C. § 1983

96.    Plaintiffs incorporate by reference the previous allegations in this complaint.

**Answer**: This is not an assertion of fact or an allegation that requires a response. To the extent that a response is required, DCS Defendants reincorporate each response to the preceding allegations.

97.    Defendants seized the children on or about December 26, 2022, without probable cause, without court order, and when the children were in no imminent danger, thereby violating the children's Fourth Amendment right against unreasonable seizure.

**Answer**: This is legal conclusion and not an assertion of fact or an allegation that requires a response. To the extent that a response is required, DCS Defendants deny the allegations.

98.     By seizing the children and taking them from the Phillips without probable cause, without a court order, and when they were in no imminent danger, Defendants also violated the Plaintiffs' Fourteenth Amendment substantive due process right to familial relations.

**Answer**: This is legal conclusion and not an assertion of fact or an allegation that requires a response. To the extent that a response is required, DCS Defendants deny the allegations.

99.     By seizing the children without a pre-deprivation hearing or court order when there was no probable cause to believe that the children were in imminent danger due to abuse or neglect and no exigent circumstances existed, Defendants violated the Fourteenth Amendment due process rights of Plaintiffs.

**Answer**: This is legal conclusion and not an assertion of fact or an allegation that requires a response. To the extent that a response is required, DCS Defendants deny the allegations.

100.     Defendants violated the Plaintiffs' due process rights under the Fourteenth Amendment when they misrepresented that N.P. did not have genetic conditions that could lead to bone fragility.

**Answer**: This is legal conclusion and not an assertion of fact or an allegation that requires a response. To the extent that a response is required, DCS Defendants deny the allegations.

101.     Defendants violated the Plaintiffs' due process rights under the Fourteenth Amendment when they misrepresented that N.P. suffered fractures that she did not actually suffer.

**Answer**: This is legal conclusion and not an assertion of fact or an allegation that requires a response. To the extent that a response is required, DCS Defendants deny the allegations.

102.    Defendants violated the Plaintiffs' due process rights under the Fourteenth Amendment when they omitted that N.P. had EDS.

**Answer**: This is legal conclusion and not an assertion of fact or an allegation that requires a response. To the extent that a response is required, DCS Defendants deny the allegations.

103.    Defendants violated the Plaintiffs' due process rights under the Fourteenth Amendment when they omitted the fact that N.P. had been handled by many family members in the days before her injuries were diagnosed.

**Answer**: This is legal conclusion and not an assertion of fact or an allegation that requires a response. To the extent that a response is required, DCS Defendants deny the allegations.

104.    By failing to follow governing law regarding the classification of child abuse allegations, Defendants violated the Plaintiffs' Fourteenth Amendment due process rights.

**Answer**: This is legal conclusion and not an assertion of fact or an allegation that requires a response. To the extent that a response is required, DCS Defendants deny the allegations.

105.    Defendants violated the Plaintiffs' due process rights under the Fourteenth Amendment by substantiating the allegations of abuse and neglect against Myranda.

**Answer**: This is legal conclusion and not an assertion of fact or an allegation that requires a response. To the extent that a response is required, DCS Defendants deny the allegations.

106.    Defendants violated the Plaintiffs' due process rights under the Fourteenth Amendment by not unsubstantiating the allegations of abuse and neglect against Myranda.

**Answer**: This is legal conclusion and not an assertion of fact or an allegation that requires a response. To the extent that a response is required, DCS Defendants deny the allegations.

107.    Plaintiffs have been damaged as a result of Defendants' wrongful conduct.

**Answer**: This is legal conclusion and not an assertion of fact or an allegation that requires a response. To the extent that a response is required, DCS Defendants deny the allegations.

108.    For each violation of 42 U.S.C. § 1983, the Phillips individually, and on behalf of their minor children, seek to recover the following:

a.    Compensatory damages in an amount to be determined by a jury;

b.    Punitive damages in an amount to be determined by a jury;

c.    Reasonable attorney and expert fees pursuant to 42 U.S.C. § 1988; and

d.    Any further relief that may be appropriate.

**Answer**: This is legal conclusion and not an assertion of fact or an allegation that requires a response. To the extent that a response is required, DCS Defendants deny anything that directly or indirectly alleges any wrongdoing, deny all liability, and further deny that Plaintiffs are entitled to any relief.

Any allegations or assertions of fact not specifically admitted or denied, or that the DCS Defendants lacked knowledge or information sufficient to form a belief as to the truth of, are denied.

## II.    Affirmative Defenses

1.    Violations of 42 U.S.C. § 1983 are not actionable claims and fails to state a claim upon which relief can be granted.

2.    Plaintiffs have failed to state a claim upon which relief can be granted.

3.    Plaintiffs' claims are barred in whole or in part by res judicata.

4.    Plaintiffs' rights, privileges, and immunities secured under the Constitution have not been violated by any alleged action or inaction of DCS Defendants.

5.    DCS Defendants are entitled to qualified immunity from Plaintiffs' claims.

6.    Plaintiffs' claims are barred in whole or in part to the extent they lack standing to bring them.

7.    Plaintiffs' claims are barred in whole or in part by the doctrine of waiver.

8.    DCS Defendants are not liable for punitive damages.

9.    Plaintiffs failed to mitigate their damages.

10.    Plaintiff's own acts or omissions, or those of a third party, contributed to or caused any alleged injury or damages and therefore, Plaintiffs are not entitled to any recovery based upon their claims.

11.    DCS Defendants are entitled to costs, including reasonable attorney fees.

DCS Defendants reserve the right to raise additional defenses and/or to amend their answer as additional information is learned through discovery or otherwise in the course of litigation.

III.    **Demand for Jury Trial**

Pursuant to Fed. R. Civ. P. 38(b), DCS Defendants request a trial by jury on all issues so triable.

WHEREFORE, DCS Defendants pray that Plaintiffs take nothing by way of their Complaint, that judgment be entered in DCS Defendants' favor, and for all other just and proper relief.

Respectfully submitted,

THEODORE E. ROKITA
INDIANA ATTORNEY GENERAL
Attorney No. 18857-49

Date:  March 13, 2025          By:    Thomas S. Pratt
Deputy Attorney General
Attorney No. 36933-18
OFFICE OF ATTORNEY GENERAL TODD ROKITA
Indiana Government Center South, 5th Floor
302 West Washington Street
Indianapolis, IN 46204-2770
Phone: (317) 232-0493
Fax: (317) 232-7979
Email: Thomas.Pratt@atg.in.gov